IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

NOV 2 4 2009

| | |
|---|---|
| ROBERT BERMAN, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | Civil No. 1:09-cv-211 |
| ) | |
| PAUL GROSSMAN, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**Memorandum Opinion**

I.  **Background**

This is a suit for breach of contract filed by Robert and Phyllis Berman ("the Bermans") against Access Northern Security ("Access") and Paul Grossman ("Grossman") individually for breach of contract and against Staten Island Yacht Sales ("SIYS") and Dick Curry ("Curry") individually for breach of contract, tortious interference of contract, and breach of fiduciary duty.

Defendants filed motions to dismiss for lack of personal jurisdiction and for summary judgment on October 5, 2009. The Court heard oral arguments on the matter on November 20, 2009. As stated in open court and for the reasons that follow in this brief memorandum opinion, Defendants' motions are GRANTED IN PART and DENIED IN PART.

II.  **Facts**

The Bermans, Virginia residents, brought this case in an attempt to enforce what they regard as a contract for the sale of their 2004 59-foot Marquis Yacht named the "Felines Fancy II" (the "Yacht") to Grossman. Grossman is a resident of New Jersey. He is the president and chief executive officer of Access, a New Jersey corporation with a principal place of business in New Jersey. Curry is employed as a "yacht specialist" by

1

SIYS, a New York corporation with a principal place of business in Staten Island, New York.

In February 2006, the Bermans purchased the Yacht from SIYS in New York. The selling price for the Yacht was $950,000. A year later, the Bermans wanted to sell the Yacht and so on June 17, 2007, the Bermans and SIYS executed a Multiple Listing Agreement, which granted SIYS, as broker, the exclusive right to manage the sale of the Yacht (the "Brokerage Agreement"). While the Brokerage Agreement was in effect, Curry served as the primary broker of the Yacht.

Principally at issue here is a letter written by Grossman on June 27, 2008 which states in pertinent part:

> **I am hereby making an offer to purchase a 2004 59' Marquis named Felines Fancy II owned by Robert & Phyllis Berman. This boat must have a hardtop over the bridge. The amount of the offer is: $875,000.00.**

Grossman signed the letter and sent it to the Curry.[1] Apparently, the letter originally contained a clause reading "*This boat must have a hardtop over the bridge and Captain's Quarters.*" Curry allegedly altered the letter by placing correction tape over "and Captain's Quarters." Curry and Grossman dispute whether this was done at the direction of Grossman or upon Curry's own initiative, unbeknownst to Grossman. The modified version of letter was then sent to Mrs. Berman and does not include the phrase "Captain's Quarters." Mrs. Berman signed the modified letter on June 30, 2008 and sent it back to Curry in New York.

---

[1] Grossman also sent an earlier "offer" of $850,000 for the boat to Curry, though what transpired with the "offer" from that point forward is in dispute.

2

Grossman eventually declined to make any payments to the Bermans and instead bought another Yacht from SIYS for $1.2 million. After Grossman declined to go forward with the purchase, the Berman's attorney wrote Grossman a letter seeking to enforce the deal. Grossman allegedly forwarded this letter to Curry and Curry, by his own admission, then "ghostwrote" Grossman's response seeking to "revoke" the offer.

### III. Procedural History

The Bermans filed their Complaint on February 25, 2009. After a series of motions to dismiss, both sets of defendants filed their Answers on May 28, 2009. Grossman and Access filed a motion to dismiss for lack of personal jurisdiction or in the alternative for summary judgment on October 5, 2009. Curry and SIYS also filed a motion for summary judgment on October 5, 2009.

### IV. Jurisdiction

#### a. Subject Matter Jurisdiction

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 as all of the defendants are of diverse citizenship to the plaintiffs and the amount in controversy as to each defendant exceeds $75,000.00.

#### b. Personal Jurisdiction

Plaintiffs argue that specific personal jurisdiction may be exercised by this Court on two grounds: 1) Grossman specifically availed himself of the benefits and burdens of Virginia by entering into a contract for a good located in Virginia, with sellers in Virginia, and the performance of which was to take place in Virginia; and 2) Curry, who undeniably had ongoing and sufficient contacts with Virginia, acted as Grossman's agent,

3

such that Curry's acts subjected Grossman to jurisdiction in this forum. Without great elaboration, this Court finds each to be a sufficient basis for jurisdiction in this case.

This Court may exercise personal jurisdiction over the Defendants in this case only if authorized by the long-arm statute of Virginia and the due process clause of the Fourteenth Amendment. *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009). Under Virginia's long-arm statute, "A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's ... [t]ransacting any business in this Commonwealth." Va.Code Ann. § 8.01-328.1(A)(1); *see also DeSantis v. Hafner Creations, Inc.*, 949 F.Supp. 419, 423-24 (E.D.Va. 1996).

As to whether the activities leading up to the purported contract are jurisdictionally sufficient, "Virginia's long-arm statute is a 'single act' statute, which means that even a single act of business can confer jurisdiction provided that it is 'significant' and demonstrates 'purposeful activity' in Virginia." *See John G. Kolbe, Inc. v. Chromodern Chair Co., Inc.*, 211 Va. 736, 180 S.E.2d 664, 667 (1971); *DeSantis v. Hafner Creations, Inc.*, 949 F.Supp. 419, 424 (E.D.Va. 1996). There is no single, bright-line rule for this determination, but "it is clear that merely entering into a contract with a resident party will not subject a nonresident defendant to personal jurisdiction in the resident's forum unless some substantial part of contractual formation or performance occurs in Virginia." *Production Group Intern., Inc. v. Goldman*, 337 F.Supp.2d 788, 793 (E.D.Va. 2004).

Virginia's long-arm statute extends the reach of this Court's jurisdiction to the degree allowed under the due process clause, and thus "the statutory inquiry merges with

4

the constitutional inquiry." *Consulting Engineers Corp.*, 561 F. 3d at 277 (citing *Young v. New Haven Advocate,* 315 F.3d 256, 261 (4th Cir. 2002)). In order to satisfy the constitutional due process inquiry, a defendant must have the familiarly requisite "minimum contacts" with Virginia as the forum state, *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945), which this Circuit evaluates by looking to: "1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Engineers Corp.*, 561 F. 3d at 277 (citing *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir.2002)) (quotations omitted).

One basis for finding "purposeful availment" is when the performance of contractual duties is to occur within the forum. *Peanut Corp. of Am. v. Hollywood Brands, Inc.*, 696 F.2d 311, 314 (4th Cir. 1982). Here, Grossman admits that he knew the Yacht was in Virginia. Though he sent no direct correspondence to Virginia, it appears he did know that the Yacht would be picked up in Virginia before sending the June 28, 2008 letter. Curry sent a suggested "form contract" to Grossman before he made the "offer" in question, which listed Portsmouth as the place of delivery. On May 13, 2008 Curry sent Grossman an email referencing the Yacht as "the one in VA" and a June 16 email from Curry to Grossman says "I just finished speaking with the owner in VA and feel confident we can put a deal together." Pl. Ex. 11 & 13. Another email on June 28 references an intended trip to Virginia by Grossman and Curry. Further, Grossman knew the Yacht's inspection would occur in Virginia. In sum, Grossman knew that the place of performance, both where the funds would be sent and where the Yacht would be picked

5

up, was to be Virginia. Grossman Depo. at 117. Accordingly, while Grossman may have never set foot in Virginia and protests that he ever "contracted" for the purchase of a good in Virginia, Grossman's avowals of his ignorance to the effects of his actions in Virginia ring hollow. Grossman clearly knew for a period of months that he was negotiating to purchase the Yacht in Virginia and that a large portion of the transaction would occur in Virginia.

Thus, since the Court finds that Grossman purposefully availed himself of the privilege of conducting activities in Virginia, and the Berman's claims clearly arise out of Grossman's activities directed at Virginia, the sole remaining inquiry is whether the exercise of personal jurisdiction would be constitutionally reasonable. To this end, some of the factors courts employ in evaluating reasonableness are: the burden on the defendant of litigating before this Court; this forum's interest in adjudicating the dispute; and the plaintiff's interest in obtaining convenient and effective relief. Though not exhaustive, the Court finds that all of these factors weigh heavily in favor of adjudication in this forum.

Regarding the Plaintiffs' second jurisdictional argument, an agent's actions can submit the principal to personal jurisdiction regardless of the principal's attenuated ties to the forum state. *See Boyd v. Green*, 496 F. Supp. 2d 691, 710 (W.D. Va. 2007). Virginia's long arm statute provides "[a] court may exercise personal jurisdiction over a person, who acts ...by an agent, as to a cause of action arising from the person's... Transacting any business in this Commonwealth...." Va. Code Ann. § 8.01-328.1. Under Virginia law, agency is simply "the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and the agreement by the other so

6

to act." *Hartzell Fan, Inc. v. Waco, Inc.*, 256 Va. 294, 300, 505 S.E.2d 196, 200 (Va. 1998)(citations omitted). The Court is satisfied beyond a preponderance that Curry acted at the direction of and for the benefit of Grossman such that his acts subjected Grossman to jurisdiction in Virginia.

Grossman adamantly highlights that Curry acted as the *Berman's* contractually-bound agent. However, Curry's relationship with the Bermans is immaterial to the Court's jurisdiction over Grossman and does nothing to diminish the level of involvement Curry had in transacting business on Grossman's behalf. If anything, this argument merely emphasizes that Curry may have been "playing both sides" to an unacceptable degree. In fact, in his deposition, Curry willingly acknowledged that he served as the agent of *both* the Bermans and Grossman. Curry Depo. 78. Curry freely refers to Grossman as his "client" and accordingly felt a duty of loyalty to Grossman. *Id.* at 79. As early as May 11, 2008, Curry sent paperwork to Grossman which clearly contemplates Grossman as Curry's "client." Pl. Ex. 8. From that point forward, there is ample and consistent evidence of Curry's representation of Grossman's interests. Though not direct evidence of an agency relationship at the time of potential contract formation, Curry's interactions with Grossman after the transaction turned sour is particularly compelling to this Court. Curry admittedly went so far as to "ghostwrite" Grossman's response to the Berman's attorney's letter seeking to enforce the agreement. As such, Curry's acts as Grossman's agent subjects Grossman to this Court's jurisdiction.

V. **Standard of Review**

Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment will be granted if it is shown that no genuine issue of material fact

remains and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-324 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party is entitled to judgment as a matter of law unless a fair-minded jury could return a verdict for the nonmoving party on the evidence presented. *Id.* at 247-48.

VI. **Analysis**

    a. **Grossman and Access' Motion for Summary Judgment**

As stated in open court, a number of material factual disputes remain in this case. First, as documented throughout Plaintiffs' memorandum in opposition, the competing deposition testimony of Defendants Curry and Grossman are rife with inconsistencies, which calls the credibility of each into question. *See Cram v. Sun Insurance Office, Ltd.*, 375 F.2d 670 (4th Cir. 1967)("clearly the credibility of a witness is a factual issue which precludes summary judgment."); *Girard v. Gill*, 261 F.2d 695 (4th Cir. 1958). Grossman's deposition testimony also reveals that he may have written a letter to the Berman's attorneys he knew was untrue and that he may have instructed his daughter to delete some 16 e-mails which are highly relevant to this case. Grossman Depo. at 183-185. Likewise, Curry admits in his deposition that he willingly encouraged Grossman to send the letter containing false information and the record is replete with other examples of his inconsistent dealings in this transaction. Curry Depo. at 173. Accordingly, this

case presents significant issues of credibility regarding two of the primary witnesses in this case, and summary judgment is inappropriate.

Further, as noted above, a significant factual dispute remains as to the language of Grossman's June 27, 2008 letter. The letter apparently originally contained a clause reading "This boat must have a hardtop over the bridge *and Captain's Quarters*." Curry Depo. at 86-87(emphasis added). Curry allegedly altered the letter by placing correction tape over the words "and Captain's Quarters." *Id.* Curry and Grossman dispute whether this was done at the direction of Grossman or upon Curry's own initiative, unbeknownst to Grossman. Grossman Depo. at 52; Curry Depo. at 86-87. Moreover, Grossman now claims that upon learning that the Yacht did not have a captain's quarters, he revoked the offer by telling Curry to "forget it." Grossman Depo. at 53, 67. All of this is highly material to the case as it directly impacts the issue of contract formation and speaks directly to Grossman's apparent theory of the case – that Grossman refused to purchase the Yacht because it did not meet his specifications.

### b. Curry and Staten Island Yacht Sales' Motion for Summary Judgment

Also highly in dispute are Curry's actions following the July 27 letter. Curry maintains that he was merely a salesman attempting to make a sale, and that his conduct surrounding the July 27 letter and in selling Grossman another boat breached no duty owed to the Bermans, contractual or otherwise. Without even factoring in the significant credibility issues apparent from Curry's deposition discussed above, significant factual disputes remain as to whether Curry knew of a contractual relationship between the Bermans and Grossman and affirmatively took steps to interfere with that relationship. Pl. Br. at 21. Further, testimony from Curry's deposition and numerous e-mails submitted

9

by the Bermans highlights factual disputes that speak directly to whether SIYS and Curry used their "best efforts" to "procure a purchaser for the Vessel" as required by the Brokerage Agreement. Pl. Ex. A.

On the issue of damages, the Court acknowledges Curry's argument regarding the paucity of evidence speaking to the damages the Bermans may assert if successful on the other elements of their claims. However, valuation of the Yacht is entirely factual and there is enough evidence in the record before the Court to warrant presenting the issue of damages to the jury. While Mrs. Berman's appraisal of the Yacht's value may be *admissible*, it is not wholly dispositive of the issue. At a minimum, whatever damages the Bermans may have incurred in the form of taxes, insurance, maintenance, payments and other costs on the Yacht since June 2008 remain viable.

Specifically on the issue of punitive damages, *O'Connell v. Bean*, 263 Va. 176 (Va. 2002), does not compel summary judgment in Curry's favor, as the Berman's claim for tortious interference constitutes an independent, willful tort. Though "breaches of fiduciary duty...while sounding in tort, are actions for breaches of the implied terms of [a] contract," *id.* at 181, the claim for tortious interference does not arise from Curry's contractual obligations to the Bermans. Rather, the claim for tortious interference arises out of Curry's purported interference with the Berman's contractual relationship with Grossman. In other words, even if no Brokerage Agreement existed between SIYS and the Bermans, the Bermans could still pursue a claim for tortious interference against Curry for interfering with the sale of the Yacht. *See, e.g., Chaves v. Johnson*, 230 Va. 112, 120 (1985). The Court is careful to note, however, that under Virginia law, an employee can ultimately face punitive damages, but punitive damages "cannot be

awarded against a master or principal for the wrongful act of his servant or agent in which he did not participate, and which he did not authorize or ratify." *Freeman v. Sproles*, 204 Va. 353, 358 (1963).

Finally, Defendants dispute whether Curry can be held individually liable for any of the claims alleged by the Bermans, especially for breach of contract. Typically, an agent is jointly and severally liable with a principal for torts committed in the scope of the agent's employment. *Miller v. Quarles*, 242 Va. 343, 347-48, 410 S.E.2d 639, 642 (1991); *McLaughlin v. Siegel*, 166 Va. 374, 376-77, 185 S.E. 873, 873 (1936). Under Virginia law, a court can also hold an employer liable for an employee's intentional tort if it finds sufficient grounds upon which to do so. *See Giant v. Enger*, 257 Va. 513 (1999). Thus, the Berman's can proceed with their claims for tortious interference and breach of fiduciary duty against both SIYS and Curry individually.

However, the Berman's breach of contract claim implicates only SIYS and not Curry in his individual capacity. Curry argues that he was a "yacht specialist" employed by SIYS, and the Bermans do not dispute this characterization in their brief. Curry/SIYS Br. at 2, ¶ 3. Caselaw cited by the Bermans on this point speaks to joint and several liability in tort of an agent or corporate officer, but not to liability of an agent for breach of contract entered into by a principal. *E.g.*, *Sit-Set, A.G. v. Universal Jet Exch., Inc.*, 747 F.2d 921, 929 (4th Cir. 1984); *PTS Corp. v. Buckman*, 263 Va. 613, 622 (2002). Though it appears Curry was designated to be the primary broker involved with the sale of the Yacht, and that Curry solicited the Berman's accession to the Brokerage Agreement, the Bermans were in contractual privity with SIYS and not Curry individually. Typically, "[u]nless otherwise agreed, a person making or purporting to make a contract with

11

another as agent for a disclosed principal does not become a party to the contract." RESTATEMENT (SECOND) OF AGENCY § 320 (2009); *see also Duncan v. Peninger*, 624 F.2d 486, 490 (4th Cir. 1980)(applying North Carolina law).

Under Virginia law, agents of a corporation can sometimes be held personally liable for the corporation's contracts, such as in the case of a dissolved corporation, *McLean Bank v. Nelson*, 232 Va. 420, 428 (1986), or when an agent fails to disclose his principal. *Thomas Branch & Co. v. Riverside & Dan River Cotton Mills*, 147 Va. 522 (Va. 1927). The Bermans fail to allege any such basis for individual liability here. As such, Curry is entitled to judgment as a matter of law on Count Three of the Berman's Complaint, but that cause of action will persist against SIYS.

VII. **Conclusion**

For the foregoing reasons, Defendants Grossman and Access' Motion to Dismiss for Lack of Personal Jurisdiction/ Motion for Summary Judgment (Dkt. no. 47) is DENIED and Defendants Curry and Staten Island Yacht Sales' Motion for Summary Judgment (Dkt. no. 50) is GRANTED IN PART and DENIED IN PART. An appropriate order shall issue.

Alexandria, Virginia
November 24, 2009

/s/
Liam O'Grady
United States District Judge